IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

SAFIRA HIMDEN, )
)
Plaintiff, )
) Case No. **2 09 CV 418**
v. )
)
WAL-MART STORES EAST, L.P. )
Defendant. )
)
)

## COMPLAINT & JURY DEMAND

Comes now the Plaintiff, SAFIRA HIMDEN ("Himden"), by counsel ROBIN G. REMLEY, of the law firm Law Offices of Robin Remley LLC, and alleges the following COMPLAINT against the Defendant WAL-MART STORES EAST, L.P. ("Defendant" or "Walmart"), and states as follows:

### Jurisdiction and Venue

1. This is an action for the denial of equal employment opportunity, discrimination, failure to accommodate in violation of the Americans with Disabilities Act of 1990, 42 U.S.C.A. sections 12101 *et seq* and Americans with Disabilities Act Amendments Act, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. C. Sect. 2000e et. seq., and retaliation for exercising statutorily protected rights under these statutes., in addition to other state law claims.

2. Plaintiff Himden is a citizen of the United States, residing in the City of Hobart, County of Lake, State of Indiana.

3. Defendant is a corporation doing business in the city of Hobart, County of Lake, State of Indiana.

4. Defendant is an employer subject to the provisions of the Americans with

1

Disabilities Act, and Title VII of the Civil Rights Act of 1964, and employs 50 or more persons, and is engaged in a business affecting commerce as defined by statute.

5. At all times relevant to this Complaint, Plaintiff Himden was employed by Defendant as a sales floor associate at the Hobart, Indiana Wal-Mart.

6. Plaintiff Himden timely filed a charge of discrimination with the Equal Employment Opportunity Commission alleging discrimination on the basis of disability, national origin discrimination and retaliation and received a Notice of Suit Rights on September 18, 2009. The same is attached to this Complaint.

7. Jurisdiction and venue are vested in this Court pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C.A. sections 12101 *et seq.*, the Americans with Disabilities Act Amendments Act (2008) and Title VII of the Civil Rights Act of 1964.

## BACKGROUND

8. Plaintiff hereby incorporates paragraphs 1-7 as if fully set forth herein as paragraph 8.

9. Plaintiff Himden is a qualified person with a disability, to wit, diabetes, severe anxiety, and severe high blood pressure.

10. Himden is and was at all relevant times substantially limited in one or more major life activities and/or bodily functions, including but not limited to i.e. eating, pancreatic production of insulin, circulatory system, reactions to severe stress.

11. Himden has, and has had a record of diabetes, high blood pressure, and anxiety during her employment with Defendant.

12. Defendants, through their officers and managers, were aware of Plaintiff's disabilities throughout her employment.

2

13. Plaintiff Himden was able to perform her duties of the position with appropriate and reasonable accommodations for eating, stress management, and defendant's restraint from placing Himden in situations of escalating stress.

14. Himden had requested unburdensome accommodations throughout her employment with Defendant to assist her in performing her job duties.

15. These requests included but were not limited to: asking to take meal breaks and snack breaks, not entering closed door meetings, asking to leave a closed door meeting and asking not to meet in a closed office environment, and not being subject to national origin harassment and comments, which would serve to exacerbate stress levels.

16. These requests went ignored and/or were denied.

17. In addition to the foregoing, Ms. Himden is of arabic descent and has an accent.

18. Ms. Himden has lived in the United States for many years and is a United States Citizen.

19. Upon meeting new manager Maria Gonzalez in 2008, Gonzalez made comments regarding Himden's accent and referencing her national origin such as "oh great, don't you just love that accent, another person working here with an accent." Himden complained, but no action was taken to protect Himden or prevent this behavior. Himden was required to continue to work with Gonzalez and the behaviors continued.

20. After reporting this harassment and discrimination, Himden was retaliated against, the conduct of Gonzalez escalated, and Gonzalez continued to make comments such as these, mimicking and mocking Himden's accent, and making comments regarding Himden's accent such as "I don't understand you, speak English, what did you say?"

21. Many employees had walkie talkies. Therefore, these comments were often

3

broadcast so that employees and customers could clearly hear.

22. Himden continued to complain. Nothing was done to remedy the situation and the comments and behaviors continued. Further, Himden was retaliated against and the behavior of Gonzalez escalated and continued.

23. In March or April 2008, Ms. Himden had knee surgery related to a work injury. She was on medical leave related to this work injury and surgery. When she came back to work, she was given a temporary assignment in the fitting room, to answer phones since she had to remain sitting with leg elevated. Gonzalez and Walmart management were aware of this, but Himden was forced to work on returns in buggies/carts, which required a lot of standing. Gonzalez told Himden if she needed to elevate her leg, she needed to be home, and continued to make her work the buggies.

24. Other similarly situated employees, non-disabled and not of foreign descent, were treated more favorably in that they were given accommodation for workplace injuries without issue.

25. Ms. Himden also required breaks and lunches to eat properly and accommodate her diabetic condition. Despite knowledge of this, and complaints made, Gonzalez and Walmart management failed to accommodate Himden. As a result, she was forced to sneak snacks and meals in restrooms and dressing rooms. Despite Himden's complaints, nothing was done.

26. On or about June 1, 2008, Himden approached Gonzalez to address an absence, but was ignored. She reported to manager Joel Gloden, who told her to discuss with Gonzalez. When Himden addressed the issue with Gonzalez, Gonzalez became irate and hysterical, and put her hands in Himden's face as if she was going to assault her, shouting comments upon information and belief, of "you don't understand...do you understand me? You don't understand

4

a word. I'm tired of you people" while mimicking Himden's accent and contorting her voice in an attempt to sound like Himden.

27. Customers, including a grandmother and her young granddaughter, watched Gonzalez's behavior in horror. Gonzalez was so verbally abusive and hostile toward Himden, while mimicking her accent and national origin, that the customer/grandmother attempted to intervene. The customer was "told off" by Gonzalez, who continued her tirade until Himden had a severe anxiety attack and passed out.

28. As a result of this incident, an ambulance was called and Himden was taken to the hospital.

29. Thereafter, Himden filed a charge of discrimination with the Indiana Civil Rights Commission.

30. Shortly after filing her charge, on or about July 10, 2008, manager Joel Gloden, store manager, and manager "Van La" called Himden to the front of the store, via manager "Todd," for a closed door meeting.

31. "Todd" had escorted her to the front of the store, and Himden requested his presence. Gloden and Van La told her "no" and to "come here." While in the office, Himden was told her to sit down.

32. During the meeting, Gloden intimidated and interrogated Himden regarding her plans for the Indiana Civil Rights charge, asking her what she "trying to do" and questioned if she had retained a lawyer.

33. During the meeting, Gloden indicated to Himden that no action was being taken against Gonzalez. Gonzalez was not demoted nor terminated, despite the fact that she became physically threatening and verbally abusive to Himden in such an excessively hostile manner that

5

even a customer who attempted to intervene was "told off."

34. When Himden indicated that they were "shoving this under the table", Gloden corrected her by making fun of her language/cultural differences by stating the saying was "under the rug."

35. Himden was overcome and indicated she needed to leave since her blood pressure was affecting her and making her feel light headed and dizzy. Gloden mimicked her and said she was getting "hyper again" (referencing her prior anxiety attacks). Gloden stood by the door, holding the handle, and looking out the peephole. He told her to "sit down."

36. Himden repeatedly asked to leave, and to talk to Todd, both of which were declined.

37. When Todd finally arrived, he asked that she be allowed to leave.

38. As a result of the foregoing, a police report was filed by Himden.

39. On or about July 14, 2008, after knowledge of a severe anxiety attack which landed Himden in the hospital, and severe issues with high blood pressure in the July 10, 2008 meeting where Himden felt trapped, Gloden approached Himden in the rear of the store and directed her to come to the office. Himden indicated that she declined, based on these prior experiences.

40. Gloden became upset and/or angry, hostile toward Himden, and told Himden if she did not come to his office, she would be fired. Although Himden requested that an associate stay near her during this conversation, Gloden instructed the associate to leave.

41. Gloden continued to intimidate Himden. Himden suffered an anxiety attack, an ambulance was called, and she was again transported to the hospital due to stroke like symptoms.

42. The constant and aggressive ridicule, harassment and discrimination of Himden

6

by Gonzalez based on Himden's national origin; harassment and discrimination of Himden by Gonzalez based on her disabilities; retaliation by Gonzalez and Wal-mart management based on Himden's complaints and filing of the Indiana Civil Rights Charge; and discrimination and harassment by Gloden, were so severe and pervasive as to create a hostile working environment, which affected Himden's ability to work in various ways, i.e. she had severe anxiety attacks, could not eat properly in order to maintain her diabetic condition and stay focused, was forced to listen to derogatory, insulting and humiliating comments and ridicule regarding her accent/national origin and her disabilities.

43. The environment at Wal-Mart, due to the foregoing became so incredibly unbearable for Himden, who suffered two anxiety attacks requiring hospitalization, difficulty with her diabetes due to improper eating, dizzy spells and other symptoms, Ms. Himden could not return to Wal-Mart. Ms. Himden was constructively discharged from Wal-Mart on or about July 14, 2008.

## COUNT I-DISABILITY DISCRIMINATION

44. Plaintiff hereby incorporates paragraphs 1-43 as if fully set forth herein as paragraph 44 of Count I.

45. Defendant knew of Himden's diabetes and requests for accommodation for her diabetes.

46. Himden was qualified as a sales associate and able to perform the duties of the job with accommodation such as snack or lunch breaks.

47. Defendant failed to accommodate Himden despite her complaints and request.

48. Defendant further knew of Himden's history of high blood pressure and anxiety attacks. She had asked to leave and avoid closed door situations and high stress-confrontational

7

issues, but was not allowed to do so.

49.    Himden was qualified to perform the duties of the job with the accommodation that she would occasionally need to leave or avoid confrontational, closed situations. She was not allowed to and/or was discouraged to do so.

50.    Himden was treated differently than similarly situated employeed because of her disabilities, diabetes, high blood pressure, and severe anxiety attacks.

51.    Himden was subject to harassment so pervasive based on her disabilities, that it altered Himden's working conditions and created an abusive working environment. Defendant's harassment was repeated, abusive and hostile.

52.    Walmart was aware of the harassment, but failed to take reasonable steps to cure the harassment.

53.    Walmart further discriminated against Himden and harassed her by failing to offer accommodation to her after a workplace injury, while offering accommodation to similarly situated non-disabled employees who suffered injuries. As a result of the foregoing, Himden suffered severe anxiety and other damages, including her eventual constructive discharge, lost wages, humiliation, and damages not yet fully determined.

WHEREFORE, Plaintiff SAFIRA HIMDEN prays for judgment in her favor and against the Defendant, and prays this court award back pay and benefits, front pay and front benefits, compensatory and punitive damages to the extent allowable by law, attorney's fees, expert fees and court costs.

ROBIN G. REMLEY #22517-45
*robinremley@comcast.net*

Attorney for Plaintiff SAFIRA HIMDEN
Law Offices of Robin Remley LLC
900 Ridge Rd. Ste T
Munster, IN 46321
(219) 756-9600
Fax: (219) 836-1931

## COUNT II-NATIONAL ORIGIN DISCRIMINATION

54. Plaintiff hereby incorporates paragraphs 1-52 as if fully set forth herein as paragraph 54 of Count II.

55. Himden is a member of a protected class, based on her national origin.

56. Himden was discriminated against and experienced adverse employment action based on her national origin as stated in foregoing paragraphs.

57. Himden was treated differently than other similarly situated individuals not in her protected class under similar circumstances.

58. Himden was subject to harassment so pervasive based on her national origin, that it altered Himden's working conditions and created an abusive working environment. Defendant's harassment was repeated, abusive and hostile.

59. Walmart was aware of the harassment, but failed to take reasonable steps to cure the harassment. As a result of the foregoing, Himden suffered severe anxiety and other damages, including her eventual constructive discharge, lost wages, humiliation, and damages not yet fully determined.

WHEREFORE, Plaintiff SAFIRA HIMDEN prays for judgment in her favor and against the Defendant, and prays this court award back pay and benefits, front pay and front benefits, compensatory and punitive damages to the extent allowable by law, attorney's fees, expert fees and court costs.

*[signature]*

ROBIN G. REMLEY #22517-45
*robinremley@comcast.net*

Attorney for Plaintiff SAFIRA HIMDEN

Law Offices of Robin Remley LLC
900 Ridge Rd. Ste T
Munster, IN 46321
(219) 756-9600
Fax: (219) 836-1931

## COUNT III- RETALIATION

60. Plaintiff hereby incorporates paragraphs 1-58 as if fully set forth herein as paragraph 60 of Count III.

61. Himden engaged in a protected activity in that she complained about disability discrimination and harassment, failure to accommodate; national origin discrimination and harassment; and filed a charge of discrimination with the Indiana Civil Rights Commission.

62. Management knew about the protected activity in that the complaints were made to management. Further, the Indiana Civil Rights charge was sent to Defendant, and manager Gloden acknowledged the Indiana Civil Rights Commission charge.

63. In close proximity to making complaints of discrimination and harassment, behaviors escalated and increased.

64. Further, shortly after filing the Indiana Civil Rights Commission charge, Himden was interrogated and questioned regarding what she was "trying to do." The harassment and discrimination increased so much that Himden was constructively discharged. As a result of the foregoing, Himden suffered severe anxiety and other damages, including her eventual constructive discharge, lost wages, humiliation, and damages not yet fully determined.

WHEREFORE, Plaintiff SAFIRA HIMDEN prays for judgment in her favor and against

the Defendant, and prays this court award back pay and benefits, front pay and front benefits, compensatory and punitive damages to the extent allowable by law, attorney's fees, expert fees and court costs.

*[signature]*

ROBIN G. REMLEY #22517-45
*robinremley@comcast.net*

Attorney for Plaintiff SAFIRA HIMDEN

Law Offices of Robin Remley LLC
900 Ridge Rd. Ste T
Munster, IN 46321
(219) 756-9600
Fax: (219) 836-1931

## COUNT IV- WORKER'S COMPENSATION RETALIATION

65. Plaintiff hereby incorporates paragraphs 1-64 as if fully set forth herein as paragraph 65 of Count IV

66. After complaining of workplace injuries, and after inquiring about worker's compensation benefits, Defendant retaliated against Himden by subjecting her to heightened scrutiny, failing to accommodate her, harassing her to the point of causing anxiety attacks, belittling her, and constructively discharged her, in retaliation for making such complaints and/or seeking worker's compensation benefits.

67. As a result of the foregoing, Himden suffered severe anxiety and other damages, lost wages, humiliation, and damages not yet fully determined.

WHEREFORE, Plaintiff SAFIRA HIMDEN prays for judgment in her favor and against the Defendant, and prays this court award back pay and benefits, front pay and front benefits, compensatory and punitive damages to the extent allowable by law, attorney's fees, expert fees

and court costs.

                                       */s/ Robin G. Remley*

                                  ROBIN G. REMLEY #22517-45
                                  *robinremley@comcast.net*

                                  Attorney for Plaintiff SAFIRA HIMDEN

Law Offices of Robin Remley LLC
900 Ridge Rd. Ste T
Munster, IN 46321
(219) 756-9600
Fax: (219) 836-1931

## Jury Demand

Plaintiff demands trial by jury.

*[signature]*

ROBIN G. REMLEY #22517-45
*robinremley@comcast.net*

Attorney for Plaintiff SAFIRA HIMDEN

Law Offices of Robin Remley LLC
900 Ridge Rd. Ste T
Munster, IN 46321
(219) 756-9600
Fax: (219) 836-1931